Good morning, Your Honors. My name is Stephen Morley. I represent the petitioner, Roberto Munez-Morales, and I request three minutes for rebuttal. Granted. Thank you, Your Honor. We are here on a question of how immigration courts are to determine whether an offense is an aggravated felony when there's a monetary requirement. We've seen this in the loss requirement. This is the funds in a money laundering situation. Now, the Supreme Court in its decision last term in Nijawin. In Nijawin. We're quite familiar. We dealt with that quite a bit yesterday. I'm sure this Court is quite familiar with that case. Has really set a lot of the parameters, and so a lot of what I've said in my opening brief has been resolved by Nijawin. Recognizing those parameters or considering those parameters, is there any reason why 1101 A43 sub D should not be treated the same as M1? I made an initial argument that the language in M1 appears broader. It says involved with as opposed to 1101 subsection D, which is just if the fund's involved. This Court effectively dispensed with that in its decision in Nijawin before it went to the Supreme Court. I really in candor can't fashion a differentiation, particularly when the Supreme Court has talked about this kind of offense in terms of monetary involvement, monetary amounts, as being the kind of offense where we look not so much to conduct, not to the categorical analysis, but really a little bit more to conduct, but still somewhat circumscribed. But given that, does that mean that your argument reduces to the money was found to be in the requisite amount only at the level of preponderant evidence as opposed to clear and convincing evidence? That's one part of my argument. And I think that's a particularly strong part of my argument. How do we know that it was only found at the preponderant level and not at the clear and convincing level? Well, I think one of the problems in this case is that the BIA, when it evaluated the sums of money, cherry-picked a couple of facts. They went into the- Well, cherry-picked facts may be cherry-picked because the particularly salient, strong facts happen to work to the benefit of the party offering them. Well, that's certainly what an advocate does. However, when the board judges do it from time to time- Well, maybe I have a higher expectation of the board. There's a famous article written in 1965 in the Supreme Court, the end of the year commentary about how judges cherry-pick history. At any rate, my expectation and the obligation of the board is to review the record in its place. One of the problems in this case is that they took from the narrative section of the PSR the government estimate of- The $13,000 from the PSR. No, they didn't even take that. They took the 400 to a million, the government estimate of the total scheme. This scheme involved 400,000 to a million. Do we have any idea where that range came from? Is that based on wire transfers? Is that based on assumptions about how much skimming per employee per restaurant was going on or what? We have no idea. And that's where really a lot of the problem comes from in this case. We have no idea where it comes from. We look at the sort of tortuous plea agreement, plea colloquy that the petitioner went through. If you go to Appendix 88, the government says the United States concedes that this defendant had not gotten that far down the road, but was on his way to operating in the same manner. So there's a concession. The problem you have is that, didn't he sign the PSR in which the government stated that the offense involved between 200,000 and a million? 400,000 and a million. And at a sentencing hearing, he told the judge he had no objection to the court's calculation that he faced fines up to $2 million or twice the amount of the money he laundered. That's on A-105. Yeah, I agree that- Nor was there any objection filed pre-sentencing. There was no objection. I agree. And just to pile on, there was no evidence to contradict the government's filing at the sentencing hearing. There was no finding, I agree, that there was nothing along those lines. However, I don't think that the judges routinely adopt all the findings- Oh, yes, they do. I spent 14 years as a district judge. In the narrowest section. Just a moment. Just a moment. And the way it plays out is that unless there is specific objection, usually raised pre-sentencing, but often then raised as well at sentencing itself, the court will, absent some facial reason not to accept the averments in the pre-sentence report, simply adopt them. I agree. And that's what happened here. So aren't we really talking about the difference between the two standards of proof, preponderance, which is what is applicable at a criminal sentencing proceeding, and the clear and convincing evidence standard that obtains here? I agree. I mean, that is a key part of- So the question really becomes, okay, it was enough at the criminal sentencing proceeding. Is it enough here? I agree. I mean, that is a key element of my argument, that there was, and part of what I did when I looked to the rather cloudy plea colloquy was to point out aspects- How was it cloudy? I think the district judge had a lot of trouble finding that this was a money laundering case. There was a lot of back and forth between the U.S. attorney and the trial counsel, the defense attorney, as to what was really involved here. Well, we're past that. I mean, the plea is not an issue anymore. I agree. The plea was accepted. I agree. The plea was accepted, but what that plea colloquy reflects is perhaps a lesser involvement and also a lack of specification of this particular defendant's involvement. Was he involved? The indictment alleged, or the information alleged, a four-year conspiracy. There's no specification as to what time frame this particular person was involved. There are concessions that he appears to have been fairly minimally involved, but there's no specification as to that. So, I think we do have the failure of the Board of Immigration Appeals when it just grabbed those numbers to further evaluate in accordance with the determination of the burden of proof. Whether it grabbed the numbers or whether it relied upon them, what about the language at the very end of the Nijawan opinion, which says, We can find nothing unfair about the immigration judges having here relied upon earlier sentencing related material. The defendant's own stipulation produced for sentencing purposes shows that the conviction involved losses considerably greater than $10,000. The court's restitution order shows the same. In the absence of any conflicting evidence, and the petitioner mentions none, this evidence is clear and convincing. In the absence of any conflicting evidence. I think the Nijawan facts were dramatically different. There were millions of dollars there. There was a stipulation. There were numbers mentioned in the indictment. You can look beyond. It's not categorical. It's not modified categorical. You can look at the specific circumstances and evidence that pertains to that in order to try to find what it was that the person pled to. In this case, is there any doubt that he pled to a crime that involved more than $10,000? Yes, there's quite a bit of doubt. There's quite a bit of doubt because What do you base that on? I base that on the fact that there was no meaningful determination of amounts. This was a passing reference. I don't know if it was a meaningless interpretation. The key line is the government estimates that the amount of money laundered was between $400,000 and a million. And I don't think anybody was paying attention to that line in the pre-sentence report. There was no, and when the judge said at sentencing, my sentencing fine range is $1,000 to $2,000,000, double the amount laundered. There was never a determination with particularity as to the fine to be imposed on this defendant in terms of the reasonable foreseeability. No fine was imposed. Exactly. No fine was imposed because nobody's paying attention. It's a hard argument to make that when it's in the record and it's the issue in the case, we're talking about the amount of money, that the fact that it wasn't discussed at length somehow means no one was paying attention to it. That's really hard for me to accept. Let me make my next argument. Well, let me ask you this. To the extent that you rely on, okay, it was preponderant as to the amount, but it wasn't clear and convincing as to the amount. So it looks to me like the only thing you have to hang your hat on is at 103 of the opinion or 267 of the record where the court says, quote, the court finds sufficient indicia of reliability with regard to the pre-sentence report, of course, to support the probable accuracy of the information contained in the pre-sentence report. So it seems to me your best argument is he's plainly not finding at a level of clear and convincing. That's the magic language of preponderant, more likely than not, probable. Thank you, Judge, for pointing that out. But I agree that that's a particular phrase. The judge has never made a finding as to the level of proof and, therefore, by taking fairly minimal proof and fairly minimal proof from this record being found at a probable level is not sufficient to make the clear and convincing. There's one additional argument, and that is this. Let's assume that that's a – in effect, what I hear you saying is maybe the judge used a wrong standard of – or wrong burden of preponderance as opposed to clear and convincing. And maybe the judge didn't make a specific finding. But what we're saying to you is, okay, let's just assume that for the moment. What evidence do you have that this was under $10,000? When your person signed the PSR, and that arguably is a waiver, and all the other things that Judge Smith and I have noted to you? I mean, there's a lot of evidence on that side that's greater than $10,000. What evidence at all do you have? My argument, Judge, is we didn't have the opportunity to present it. We did not have the opportunity because Judge Honeyman, the immigration judge, dismissed the charges. We won before the immigration judge. The government appealed to the Board of Immigration Appeals. You did have the opportunity at sentencing to present something saying that – I don't think – Basically, it would have been to his benefit to say it was under $10,000. But look, I was just part of – there was a conspiracy here. I was a low person on the total poll. I had no idea what they were talking about. I was involved with next to nothing, and yet there's – I agree. If somebody was thinking that far ahead in terms of immigration consequences, that clearly – No, no, no. No, no, no. That's not the question. Is there any disincentive for this criminal defendant at this sentencing proceeding not to challenge the amount if there was a reasonable basis to question that fact? I think there's no – Can you identify any disincentive? I think there's no disincentive to do so. However, I believe that when you're talking about this kind of a case, the reality in front of you – I think that there's always an incentive for this criminal defendant to argue mitigation. If anybody's paying attention to fine levels, but nobody's paying attention to fine levels, and nobody's paying attention to a $2 million bond – The sentencing calculus is much broader than simply fine levels. They're looking at – but they're looking at the calculation in terms of going to jail and maybe in terms of restitution or forfeiture, of which there's no mention. With this kind of a defendant in front of a judge, they're not even thinking about fines. Or if they're thinking about fines, they know the judge is going to tailor it to this particular defendant's economic basis. They're not thinking about the upper level. Absent a specific disincentive, then there's always an incentive to mitigate your role, even if that doesn't redound to your benefit as a defendant in terms of a fine, which may be meaningless because this guy's not going to have the money to pay the fine anyway. I think that that – I think that that's – that does not address the reality. Mitigating facts give a sentencing judge a reason in the guidelines period to go to the bottom level of a guideline range. Absolutely. Absent mandatory guidelines, merely advisory guidelines, there's still a reason for the judge to go lower than advisory. This was mandatory guidelines. I understand. This was a mandatory guideline time, and there was no reason really for anybody to pay attention to. And in fact, the judge's comment at sentencing was very passing reference. My – not even a real specific finding. My fine range is, what, $1,000 to $2 million, and then doesn't impose a fine. It'd be different if he actually looked at the fines and made a particularized fine determination in this case. But nobody's paying attention. It's a passing reference, and on that basis, it does not make out clear and convincing evidence. The final point I want to make, and I know my time is up, is that there is – at the end of the Beisikoff, which is cited with approval by the Supreme Court, it says that the alien will have an opportunity to object and offer evidence of inaccuracies that may not have had bearing on the criminal case, but that do have a bearing on the removal case. And then it goes on. Importantly, neither party approached the hearing below with the understanding that testimonial evidence could be offered directly to the immigration judge. My client did not get that opportunity. Your Honor asked, what evidence do I have? We never had that opportunity. The case went up to the board. The board said, on this record, we find it's an aggravated felony. We remand to the immigration judge for an entry of an order of removal and the inquiry as to whether or not there's any relief. There was no relief. If you're on rebuttal, then you can tell us what evidence you did have you would have presented if you had that opportunity. Okay. Thank you. Mr. Jentzer? May it please the Court, I'm Lyle Jentzer. Good morning. I represent the respondent today. I'm from the Department of Justice. In Nijawin, there was a stipulation. And here, you've got essentially what was in a PSR. Isn't there a qualitative difference between the two? There is a qualitative difference. The real issue here is what all was out there. And that's what's so important. What's the qualitative difference? Well, I mean, I'm sure what my opponent is saying is, at least in the stipulation, he says this is the amount. Here, we never had him say this is the amount. But in the procedure that's followed with respect to criminal sentencing, the PSR is prepared well ahead of the actual sentencing. It's made available to the defendant and defendant's counsel to review, and to review with the purpose of interposing written objections to it. In the absence of a written objection, in addition to a lack of objection in the sentencing proceeding itself, why isn't that the functional equivalent of a stipulation? We quite agree. It's more than sufficient to show clear and convincing. Yes, we do agree with you, Your Honor. What's important here is that this petitioner was represented by counsel throughout his criminal proceedings. Now, just to clarify a few things. The information specifically sets the dates of the conspiracy, and he pled to that, a three-year conspiracy. Later on in the fact, it says the conspiracy actually started that date. Although his brother had a restaurant earlier, the conspiracy to do what they did didn't start till 99. I asked Mr. Morley if there was any disincentive for Mr. Munoz-Morales to challenge the amount at the time of sentencing. And I ask that because it occurs to me that there may be, in a situation such as Mr. Munoz-Morales, the desire not to interpose objections, not to in any way annoy, aggravate a prosecutor or a sentencing judge, because what occurred here was a plea agreement. There was an agreement between the prosecutor and the defendant. And as a consequence of that agreement, it may have rendered some of these factual matters relatively unimportant. Is that a factor that we ought to consider? No, there was absolutely no disincentive. The agreement did not specify a numerical amount to the extent he could have shown that he was responsible for much less, that he was the small fry. That would have helped him on the sentencing. Now, it's also important that contrary to what Mr. Morley has said, the judge specifically asked him after calculating the fine, do you agree with my calculation? Is there a problem with that? And Petitioner's Counsel said, no, we had other objections. So they didn't just sit on their hands during this agreement. They had other objections that they posed and that got resolved. This one, they didn't. Why? Well, there can be a lot of reasons, but the probable reason is because the amount was $400,000 to a million dollars, and there was just nothing there to contradict that. I don't understand how your answer is responsive to what I take Judge Smith's question to be directed at. This is a case where the government admits that this guy is an apprentice, I think the word was, a very small part of a larger conspiracy. So to that extent, the government's helping the defendant achieve a short sentence, and he did get a very short sentence. So if he expected to get a short sentence because he pled and because the government was going to agree he was a small fry or whatever cliche we want to use, then why isn't Judge Smith correct that there would be no point in fighting about amounts of potential fines because he's expecting he's going to get no fine, and that's what he actually got, and that he's going to get a very short sentence, and that's what he actually got. So why pester the judge with quibbling about what the probation officer put in the pre-sentence report? One, it's not pestering. Two, he doesn't know exactly what sentence he's going to get. Three, because he and his attorney have the obligation to set the record straight. What is the amount? What was my involvement? There's always incentive to do that. Now, I mean, we have to understand that this was a three-year conspiracy that he was skimming money for three years. When you think of that, that's a lot of money. You know it's going to be... It depends on how much he skims. If he only has one employee and he skims 5% of that employee's weekly paycheck, that's not a lot of money. So it all depends on your assumption. Then he makes objections under federal criminal rule procedure 32 to the sentencing report, which he chose not to do. For whatever reason, he made a tactical decision. Now, I'm not going to speculate the way Mr. Morley did. I don't know why he didn't. But we do know that when you don't challenge, when you don't dispute the factual findings of the sentence report, then the judge can adopt it as fact. And I've cited three cases to this court to go on whether the judge used a preponderance of the evidence. That doesn't mean that it's not clear and convincing at a later thing, because his failure to object coupled with that... By your logic, it was proven beyond a reasonable doubt because there was no objection at the sentencing hearing. It certainly was not. There was no reason to prove it beyond a reasonable doubt. No-one's claiming it was. No, but you're saying the lack of an objection makes it an unassailable fact. Not unassailable, but it could have been objected to, and when he didn't, he took that risk. We are... It is our position, along with the Ninth Circuit, the Fifth Circuit and the Tenth, the cases that we've cited to you, that that put it... The board was then able to consider that, looking at everything, along with the pretrial agreement, the colloquy where it was set out in great detail, how this conspiracy worked. When you put all that together, coupled with a lack of objection, the board found that clear and convincing evidence showed that it was over 10,000. That's all the board had to do. Judge Pauly, in his opinion, doesn't talk at all about all the things you're depending on. He only cites the lack of an objection to the pre-sentencing report. Judge Pauly... That's his sole ground. If you look at the very first BIA decision, which I believe was written by Philpoo, it wasn't Pauly, he wrote the second. He lists all the evidence that was considered very clearly. Pauly, in the second decision, then lists and says, including the PSR. The board made very clear that they considered... You're talking about the September 16, 2008... Yes. Judge Pauly. He lists one and two. Well, if you look at the... Whatever the very first decision was, he lists all the evidence that was considered. It's on top of the second page of the decision or something. Then he says, in the next paragraph, that the evidence shows, yes, he relied on the PSR, and specifically on that amount, but that has to be taken in context. The board didn't just have the PSR. It had everything, and it said... It looked at everything. Well, what Judge Pauly recites is, one, whether the $10,000 threshold was met must be determined by reference to the facts of the case rather than the elements of the offence. It had to be proven at trial beyond a reasonable doubt. And two, the evidence in the instant case, including a pre-sentence investigation report... But he doesn't stop there. ...and a trial judge's adoption of that document through explicit factual findings in the sentencing context established that the amount of funds involved, money-laundering offence, exceeded $10,000. That indicates clearly that they didn't. So he's... It appears, then, that what the BIA is doing is not merely with reference to the PSR as a document or as a document that's prepared as they are in the ordinary course by a probation officer, but the important procedural fact of the court's explicit adoption of the PSR report, that that seems to give it, or that that does give it, some added weight. The question for us is whether or not that added weight is clear and convincing evidence or whether it's merely preponderance or whether it's something in between. I think when you consider all of this and when you consider the lack of objection, not just to the PSR, but when the trial judge tried to give or was willing to give Mr. Munoz-Morales a way out of the plea and they said, no, no, the facts that were recited are accurate, I've investigated, they are correct, and Munoz-Morales himself says, yes, they are correct. When you put all that together, when we know the conspiracy, how long it lasted, and we know from the pre-sentence report, at least, I think that it was you who mentioned earlier, Your Honor, the $13,000, which is part of this, it's going to be over $10,000. I'd like to move on... There's no factual challenge to the $13,000 averment at paragraph 13. No, there was not. I'd also like to move on to the fairness that Mr. Morley talked about, that he didn't have an opportunity at immigration court to challenge this. That is simply not an accurate representation of this record. The board remanded and said, we find clear and convincing evidence, go back to the IJ, see if there's any relief that you can file. What Mr. Munoz-Morales said is, no, I'm not going to do that, I'm going to take this straight up to the Third Circuit. He, at that hearing, he certainly could have said, wait a minute, Your Honor, there's a problem here. You know, the board is incorrect when they calculate that $400,000 to a million. Further, Babesnikov came out prior to the board's second decision. When that decision, when the board's second decision came out, there was nothing to preclude. Mr. Munoz-Morales saying, I didn't get my second chance, I didn't understand I had it, I'm going to file a motion to reconsider. That wasn't done either. At no time has this petitioner ever claimed that the amount was under $10,000. He simply said, you haven't done now. But what you also have is, you have an immigration judge who found that the evidence was insufficient to show it was more than $10,000. I mean, this was like a ping-pong ball between the BIA and the IJ. And the IJ had real problems. And finally, the BIA overruled the IJ on this and said that there were sufficient findings of fact to determine the amount exceeded $10,000. But obviously, you've got a, you know, an IJ who's reasonable here, and somebody looked at this, looked at it hard, and thought there wasn't enough. A few points on that. The IJ's primary position was, you can't consider a PSR, a pretrial or a pre-sentence report. That's what he based it on. Najawen. Yes. Najawen changed all that. He then said he cited the Watts case from the Supreme Court and said, there's the problem with clear and convincing. And he said to the board, you haven't considered Watts. And Pauli, when he came back, said, Watts is inapplicable because we have the failure to object in the trial judges incorporation. Watts was a contested case where the accused, Mr. Watts, challenged the findings in the PSR. That's not what we have here. We do not have a situation here where there's more than one conspiracy, where there's any uncharged misconduct that could have been attributed to this individual. We don't have in a locker situation where he pled guilty to a certain amount, and then the judge said, yeah, but the whole scheme was much more. Yeah, I agree with you. The lock is different. One conspiracy, that's what he pleads guilty to. He says, yes, this is what I did. Then we get to the pre-sentence report. It says, here's the amount. The judge calculates the fine based on that, says, you have an objection to this. Is there any problem with this?  I had other objections, not here. What he was interested in was trying to reduce the amount of time he had to serve, the confinement time. And that's where he placed his eggs. That's what he argued. That would have given him incentive to say, I'm just a small fry. I have nothing to do with this. The amount doesn't apply. He didn't do that. We believe that the board, we believe that clear and compelling evidence does not show that the amount was under $10,000. We believe the board correctly applied this court's precedent and its own precedent. Subject to your follow-up questions, that will conclude my argument.  Thank you, Your Honor. Mr. Morley, on rebuttal. Thank you, Your Honor. Now, what you were asked is, what evidence did you have that you didn't present, that you could have presented, or you didn't have an opportunity to present, that the amount that was involved was less than $10,000? Judge, I don't have any record evidence in that regard. What we would have presented at a full hearing would have been my client's limited scope and involvement in this case, and that there's no ability... So to this day, you have no specific factual challenge? At a hearing, we would put together... Just a moment. I'm trying to refine. In fact, I intended to do this before you stood up. This matter then comes down entirely to the question of whether or not through the amount of process afforded in the criminal justice system and its application of the preponderance of the evidence standard, which is inherent in the sentencing process, the determination of various facts, in this case, over $10,000 also in this particular matter reaches the clear and convincing threshold. That's really what this comes down to because you have nothing else to offer. That's what this comes down to as well as the lack of opportunity. Let me address... That's a very interesting follow-up question because it did occur to me before your adversary pointed it out that there had to be opportunities for your client to affirmatively seek to supplement the record. Not only do we have his silence throughout the sentencing proceeding, which is a classic example of silence means consent, but as far as I know, there is no affirmative attempt to supplement the record. Let me address that in two ways, Judge. First, his silence in this could simply mean his agreement that this finding meets preponderance of the evidence. Therefore, not contesting is we agree that the government can prove this to preponderance of the evidence. Nothing more. Second, in terms of his silence, yes, there are mechanisms, but remember, when the board remanded the case, it said, we find that this is an aggravated felony. We remand to the immigration judge for the entry of a finding of removability and the opportunity for the alien to ask for relief. Now, in immigration court, relief means discretionary if there are out there any discretionary forms of relief from the finding of removal. Asylum, cancellation of removal, things of that nature. It is not an opportunity to do that. That is what the board of immigration appeals has found to be binding on that lower immigration court judge. Now, certainly, I suppose we could have argued Babysakov is entitled to we could have gotten back Babysakov is a relatively new case at that point. I don't know that everybody understood it. We're still arguing the issue before the Supreme Court definitively decided it this past spring in terms of the scope of the availability of looking at other documents so that we pursued it as a legal issue not at that point as a factual issue and we did not have the opportunity that the board of immigration appeals should have looked at on its second time and said, well, wait a minute. According to our decision in Babysakov this individual did not have the opportunity to have the hearing that we say an alien is afforded in order to contest the monetary findings. We should and the board of immigration appeals should have done that, should have remanded it back to the immigration judge for a hearing pursuant to its own decision in Babysakov and if this court does not find that the amount of funds here is proven by clear and convincing evidence, I'd ask this court as I have in the briefs to remand so that Mr. Munoz Morales can have that opportunity that he has not yet had. Thank you. Thank you very much. Thank you to both counsel for well presented arguments. We'll take the matter under advisement and we'll take a five minute recess prior to the next case.